UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

AKAMAI PHYSICS, INC.,                                                No. 20-12297-t11

    Debtor.

## **OPINION**

Before the Court is the U.S. Trustee's ("UST's") motion to dismiss or convert this chapter 11 case. The Court confirmed a plan of reorganization in June 2021. The Debtor substantially consummated the plan and is not in default. The Court finds that the UST did not carry its burden of proving "cause" for dismissal or conversion so the motion will be denied.

A.    <u>Facts</u>.[1]

The Debtor Akami Physics, Inc. is a laser research & development and systems engineering company in Las Cruces, New Mexico. Allen Geiger founded Debtor in 2001 and is its sole shareholder, director, and officer.

Historically, Debtor's revenue has come from government and commercial contracts for the design, development, installation, and maintenance of various laser technologies. Its first government contract was with the United States Department of Defense (through the Air Force) in 2003. Between 2003-2012, Department of Defense contracts were lucrative for Debtor. This changed in 2012 when, in Mr. Geiger's words, things "got slow" and the contracts "dried up."

From 2012-2019, Debtor's income was very limited. During those years Debtor borrowed money from various of Mr. Geiger's friends and associates, issuing promissory notes to them for

---

[1] The Court takes judicial notice of its docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

the amounts loaned. Several notes, totaling $368,000, are in evidence. Debtor did not repay any of the loans as agreed.

Mr. Geiger's testimony about the loans suggests that some of the lenders were in the nature of investors, interested in helping Debtor develop and bring to market a chemical process of some kind. Darrin Blaine (a licensed Indiana attorney serving as Debtor's "intellectual property advisor") testified at the § 341 meeting that the lender/investors "were going to try to help Akamai go forward with some of their technology out in the commercial world."

Among other loans, Debtor borrowed $150,000 from Samuel Striker on June 12, 2017, promising repayment by December 12, 2017. Having received no repayment, Mr. Striker sued Debtor in state court for breach of contract on October 4, 2019. The parties settled the lawsuit, and on December 10, 2020, the state court entered a stipulated judgment against Debtor in favor of Mr. Striker for $225,000.00.

Concerned that other lenders would file similar lawsuits, and also seeking a way to manage payment of the Striker judgment, Debtor filed this "subchapter V" case on December 18, 2020. The UST appointed Chris Pierce as subchapter V trustee.

Debtor scheduled unsecured nonpriority claims of $1,136,508.08, including the Striker judgment, the debts to the other lender/investors, and $532,758.08 to insiders, including Geiger. Debtor has no secured or priority creditors. It valued its assets at about $30,000.

On March 18, 2021, Debtor filed a plan. It provided for the payment of non-insider unsecured creditors as follows:

> Class 3 Creditors will be paid over a period of five (5) years, in pro rata payments due on the first of each month, with the first such payment due on the first day of the first month after the Effective Date, With Interest at the rate of 1% per annum. Debtor shall pay the greater of its Disposable Income as defined in 11 U.S. C. § 1191(d) or a monthly payment of $10,000.

The plan provides the following about funding the payments to creditors:

> Debtor plans on funding this plan through the entry of commercial contracts as well as potential government contracts for the design, construction, installment, and maintenance of laser based devices.

Elsewhere the plan states:

> Research and Development. The Debtor is in the business of researching, development and fabricating laser technology for various commercial and governmental applications. The Debtor currently has 0 employees but is in the position to be able to begin hiring the necessary employees upon the entry into a commercial or government contract. . . . .

and

> Debtor has not operated under any government or commercial contract since approximately March 2020 . . . .The Debtor has not employed any employees and is essentially in a holding pattern until such a time that commercial and/or government contracts can be awarded. Debtor's principle [sic] has continued to lobby for any such contract.

Finally, the plan provides the following with respect to discharge:

> Pursuant to 11 U.S.C. § 1192, if this Plan is confirmed, as soon as practicable after completion of all payments due within the first five (5) years of the Plan, the Court shall grant Debtor a discharge of all debts provided in § 1141(d)(1)(A) of the Bankruptcy code and provided for in the Plan . . . .

The UST objected to confirmation of the plan, arguing:

> Debtor asks the Court and Unsecured Creditors, the only impaired class, to join in speculating about possible lucrative future government contracts without providing any details about the nature of those contracts, the value of the proposed contracts, the technology on which they are based, the agency with which Debtor is negotiating, or the status of such negotiations.

Elsewhere the UST argued that "Debtor's proposals for funding the plan appear to be merely aspirational." There were no other objections.

The Court scheduled a hearing on plan confirmation on May 26, 2021. The tally of ballots Debtor filed the day before the hearing showed three votes in favor of the plan and none against.

At the confirmation hearing the parties informed the Court that they had settled the UST's objection, pursuant to which Debtor agreed to add the following to the confirmation order:

> If no actual operating income is generated within 120 days from the date of entry of this Order, the Court will entertain a Motion to Dismiss or Convert from the U.S. Trustee, the Subchapter V Trustee, or any other party in interest, on shortened notice (10 days plus 3 days for mailing).

(the "Settlement Language").

At the hearing the subchapter V trustee urged the Court to confirm the plan. He opined that confirmation was in the best interests of the unsecured creditors because they likely would get nothing if the case were to be dismissed or converted. The trustee also emphasized that the plan drew no objections or nonaccepting votes from the creditors.

On June 22, 2021, the Court entered a confirmation order, which included the Settlement Language. As there were no non-accepting classes and an impaired class voted in favor of the plan, the Court confirmed it as a "consensual" plan pursuant to § 1191(a).[2]

Debtor substantially consummated the plan in August 2021.[3] On August 11, 2021, the Court entered an order discharging the subchapter V trustee. Debtor has made all required plan payments, obtaining the necessary funds from equipment sales or loans from Mr. Geiger.

Debtor did not begin generating operating income within 120 days of plan confirmation. The UST's motion to dismiss or convert (the "Motion to Dismiss") followed.

B.  Dismissal or Conversion under § 1112(b).

Section 1112(b)(1) provides in relevant part:

> . . . on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause[.]

---

[2] Unless otherwise indicated, all statutory references are to 11 U.S.C.
[3] At the final hearing on the Motion to Dismiss, Mr. Geiger estimated that he can continue to fund the monthly plan payments through about August 2022.

§ 1112(b)(4) lists 16 examples of "cause." The movant bears the burden of proving cause by a preponderance of the evidence. *In re Jet Sales West, LLC*, 2021 WL 6013541, at *2 (Bankr. D.N.M.); *In re Alt*, 305 F.3d 413, 420 (6th Cir. 2002); *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994).

The Motion to Dismiss cites four examples of alleged cause:

- § 1112(b)(4)(A): substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
- § 1112(b)(4)(E): failure to comply with an order of the court;
- § 1112(b)(4)(H): failure timely to provide information or attend meetings reasonably requested by the United States trustee; and
- § 1112(b)(4)(M): inability to effectuate substantial consummation of a confirmed plan[.]

In addition, at the final hearing on the Motion to Dismiss the UST argued that the case should be dismissed or converted because Debtor is engaged in a type of fraud the UST described as "lulling," i.e., paying creditors a token amount to keep them from trying to collect their debts, with no intention of paying the debts as agreed. The UST argues that Debtor cannot generate enough revenue to fund the plan and is simply putting off the inevitable.

Debtor and Len Middleton, one of Debtor's unsecured creditors, objected to the Motion to Dismiss. None of Debtor's creditors joined the motion.

C. <u>The UST Did Not Demonstrate Cause to Dismiss or Convert</u>.

The Court is obligated to dismiss or convert a case if the movant demonstrates cause and the exception in § 1112(b)(2)[4] does not apply. *See, e.g., In re L&T Machining, Inc.*, 2013 WL 3368984, at *7 (Bankr. D. Kan.). Here, the UST did not demonstrate cause.

---

[4] Dismissal/conversion is not required if not in the best interests of creditors, there is a reasonable likelihood a plan will be confirmed within a reasonable period, there is a reasonable justification for debtor's act or omission constituting "cause," and debtor can cure the act or omission.

1. § 1112(b)(4)(A) (substantial or continuing loss/no likelihood of rehabilitation). Cause under this subsection has two important parts: a continuing loss or diminution and an absence of a reasonable likelihood of rehabilitation. *See, e.g., In re ARS Analytical, LLC*, 433 B.R. 848, 862 (Bankr. D.N.M. 2010); *In re Andover Covered Bridge, LLC*, 553 B.R. 162, 174 (1st Cir. BAP 2016); *In re Citi-Toledo Partners*, 170 B.R 602, 606 (Bankr. N.D. Ohio 1994). Both parts must be satisfied. *Andover Covered Bridge*, 553 B.R. at 174. Here, the Court found a reasonable likelihood of rehabilitation when it confirmed the plan, as § 1129(a)(11) requires a finding that confirmation "is not likely to be followed by further financial reorganization of Debtor[.]" *See, e.g., In re 15375 Mem'l Corp.*, 386 B.R. 548, 552 (Bankr. D. Del. 2008), *rev'd on other grounds*, 400 B.R. 420 (D. Del. 2009) (rehabilitation means to reestablish a business); *In re Creekside Sr. Apartments, L.P.*, 489 B.R 51, 61 (6th Cir. 2013) (rehabilitation means to be "put back in good condition; re-establish[ed] on a firm, sound basis" or placed "back on a solid financial footing within a reasonable amount of time"); *ARS Analytical*, 433 B.R. at 862 ("[r]ehabilitation in Chapter 11 starts with a confirmable plan."). Dismissal or conversion under this subsection generally should be sought before plan confirmation. Seeking post-confirmation relief on "lack of feasibility" grounds is tantamount to asking for revocation of the confirmation order without complying with § 1144.[5] With a confirmed plan that is not in default, it is difficult to find cause for dismissal or conversion under this subsection. The argument is overruled.

2. § 1112(b)(4)(E) (failure to comply with a court order). Cause for dismissal or conversion under § 1112(b)(4)(E) may arise post-confirmation where debtor fails to comply with

---

[5] Only revocation under § 1144 can undo a confirmed chapter 11 plan of reorganization. A party seeking revocation, however, must file a motion within 180 days of plan confirmation and prove that the confirmation order was procured by fraud. § 1144. The UST has not invoked § 1144, nor has it made the necessary evidentiary showing.

the confirmation order. *See, e.g., In re Carroll*, 2019 WL 2120762, *2 n.4 (Bankr. W.D. Mich.) (debtor's failure to file post-confirmation quarterly reports as required by the confirmation order could be cause for conversion or dismissal); *In re Brown*, 2021 WL 2656686, *4 (Bankr. D. Mass.) (same). Here, the UST argues that Debtor failed to comply with the confirmation order by not "provid[ing] evidence that it is generating actual operating income within the time ordered." The argument is overruled. The order did not require Debtor to generate operating income within 120 days; it only gave the UST the right to file the Motion to Dismiss if operating income was not timely generated.[6]

    3.    <u>§ 1112(b)(4)(H) (failure to provide information to the UST)</u>. Post-confirmation, the UST's involvement with Debtor usually is limited to ensuring that the plan is substantially consummated. *See, e.g., In re Betwell Oil & Gas Co.*, 204 B.R. 817, 819 (Bankr. S.D. Fla. 1997). The confirmation order does not obligate Debtor to provide information to the UST, nor is there evidence that Debtor failed to do so.

    4.    <u>§ 1112(b)(4)(M) (inability to effect substantial consummation)</u>. Cause for dismissal includes a debtor's inability to substantially consummate a confirmed plan. The uncontroverted evidence is that Debtor substantially consummated the plan. This argument fails.

    5.    <u>Debtor's alleged "lulling" fraud</u>. There is some evidentiary support for the UST's concern that Debtor will not obtain the contracts necessary to pay creditors. Mr. Geiger has been projecting that lucrative government contracts are "just around the corner" for some time, but so

---

[6] The Settlement Language can be interpreted in a number of ways, including that Debtor tacitly agreed to dismissal or conversion if no operating income was generated by the deadline. The Court does not adopt this interpretation; if that is what the parties had agreed upon, it could have been clearly stated, using simple "drop dead" language. Instead, the Court interprets the Settlement Language as merely giving the UST and creditors the right to *seek* dismissal or conversion.

-7-
Case 20-12297-t11    Doc 74    Filed 04/21/22    Entered 04/21/22 16:01:54 Page 7 of 13

far no contracts have materialized. It could well be that Debtor will never get the hoped-for revenue stream from lucrative contracts. Nevertheless, the "lulling" argument must be overruled.

    a.    <u>The argument is procedurally improper</u>. The UST did not allege "lulling" or any other type of fraud in its Motion to Dismiss, even though the UST acknowledged that it had been concerned about the issue from the start. The alleged lulling fraud should have been asserted in the motion. The Court is inclined to disregard the argument because it was not properly pled. *See, e.g., In re Koper*, 560 B.R. 68, 74-75 (Bankr. E.D.N.Y. 2016) ("Generally, courts will not consider arguments made for the first time at a hearing.").

    b.    <u>The fraud argument is made too late</u>. The alleged "lulling" fraud relates to Debtor's pre-confirmation projections and actions. That is made clear in the UST's objection to confirmation of Debtor's plan. The theory should have been litigated at the confirmation hearing, as a condition to confirmation is that the plan was proposed in good faith. § 1129(a)(3). Dismissing the case now on a finding that Debtor is engaged in "lulling," a form of fraud, would not be consistent with the earlier good faith finding.

    c.    <u>The fraud theory is not supported by a preponderance of the evidence</u>. While Debtor *might* be engaged in some sort of creditor "lulling," the evidence does not necessarily indicate that. The plan made clear that Debtor had no government contracts in hand and had not had any for a long time. Instead, the Debtor stated its opinion that lucrative contracts would be forthcoming post-confirmation. Such statements about predicted future events generally are not fraudulent. *See, e.g., Register v. Roberson Const. Co., Inc.*, 106 N.M. 243, 245 (S. Ct. 1987) (with some established exceptions, "an action for fraud will ordinarily not lie as to a pattern of conduct based on promises that future events will take place"). Unless Debtor knew it would never get any

-8-
Case 20-12297-t11    Doc 74    Filed 04/21/22    Entered 04/21/22 16:01:54 Page 8 of 13

substantial contracts, for which there is no evidence, a fraud theory likely would fail. The current record does not support a finding of fraud.

Further, Mr. Geiger and other insiders have loaned Debtor more than $530,000, and Mr. Geiger continues to loan money to the reorganized Debtor post-confirmation. These facts are inconsistent with the alleged intent to lull creditors rather than pay them as agreed.

D.  Effect of a Plan Confirmation on Dismissal or Conversion Remedies.

One issue to consider when weighing the Motion to Dismiss is the effect Debtor's confirmed plan of reorganization could have on the parties' rights if the motion were granted.

1.  Confirmed chapter 11 plans remain binding, thereby altering available remedies upon dismissal or conversion. In typical chapter 11 cases (i.e., not individual or subchapter V "cramdown" cases), confirmation of a chapter 11 plan binds the reorganized debtor and its creditors to the terms of the plan; revests property of the estate in the reorganized debtor, and discharges pre-confirmation claims. § 1141. The automatic stay generally terminates on plan confirmation. § 362(c).[7] While modification of a confirmed plan is possible before it has been "substantially consummated,"[8] § 1127(b), no modification is possible thereafter. *Id.*

If a typical chapter 11 case is converted after plan confirmation, the resulting chapter 7 estate has no assets because the plan vested all estate property in the reorganized debtor. *See, e.g., In re T.S.P. Industries, Inc.*, 117 B.R. 375, 378 (Bankr. N.D. Ill. 1990) ("Once property has vested in the Debtor, conversion will not revest that property in the estate."); *In re K&M Printing, Inc.*, 210 B.R. 583, 585 (Bankr. D. Ariz. 1997) ("[T]here are no Code provisions that revest estate property upon post-confirmation conversion of a Chapter 11 case."); *In re Freeman*, 527 B.R. 780,

---

[7] Confirmation vests estate property in the reorganized debtor and pre-confirmation debts are discharged. *See* § 1141(b) and (d). Those events result in stay termination. § 362(c)(1) and 2(a).
[8] *See* § 1101(2).

784-87 (Bankr. N.D. Ga. 2015) (unless the plan or confirmation order provides otherwise, "property of the estate on the date of confirmation vests in the debtor at confirmation and does not revest in the post-conversion estate"); *In re Sundale*, 471 B.R. 300, 306 (Bankr. S.D. Fla. 2012) (same); *In re L&T Machining, Inc.*, 2013 WL 3368984, at *6 (Bankr. D. Kan.) (same). In such cases conversion does not help creditors.

Dismissal has no materially greater benefit to creditors; it does not "undo" the plan, which remains binding on the reorganized debtor and its creditors. *See, e.g., In re Potts*, 188 B.R. 575, 582 (Bankr. N.D. Ind. 1995) (dismissing a chapter 11 case and noting that the confirmed plan could be enforced in state court); *In re T&A Holdings, LLC* 2016 WL 7105903, at *5 (Bankr. N.D. Ill.) ("the terms of a confirmed Chapter 11 plan remain binding post-dismissal"); *In re Page*, 118 B.R. 456, 460 (Bankr. N.D. Tex. 1990) (following post-confirmation dismissal, "creditors are free to enforce their plan-created contractual rights in the appropriate state court forum"); *In re JMP-Newcor Intern., Inc.*, 225 B.R. 457, 462 (Bankr. N.D. Ill. 1998) (debtor's plan of reorganization was a contract among debtor and its creditors); *see also Paul v. Monts*, 906 F.2d 1468, 1473 (10th Cir. 1990) (confirmed chapter 11 plan is a binding contract).[9]

In most standard chapter 11 cases with confirmed plans of reorganization, neither conversion nor dismissal materially benefits creditors. Instead, a creditor's remedy is to sue the debtor in state court to enforce the creditor's rights under the chapter 11 plan.

2. <u>Confirmed chapter 12, 13, and individual 11 plans are negated by dismissal or conversion</u>. The rule is different for chapter 12, 13, and individual 11 plans (together, "Disposable Income Plans"). With Disposable Income Plan cases, dismissal or conversion negates the

---

[9] Dismissal restores certain liens or other property interests avoided. *See* 11 U.S.C. § 349(b); *see also T&A Holdings*, 2016 WL 7105903, at *5. Further, in some instances dismissal provides stay relief. *Id.* at *5.

confirmation order and the plan, restoring the parties to the *status quo ante*. *See, e.g.*, *Harris v. Viegelahn*, 575 U.S. 510, 520 (2015) (chapter 13 plan no longer binding after conversion to chapter 7); *In re Yao*, 548 B.R. 818, 822 (Bankr. D.N.M. 2016) (same); *In re Petit*, 2019 WL 1975844, at *5 (Bankr. D.N.M.) (same); *In re Nash*, 765 F.2d 1410, 1413 (9th Cir. 1985) (chapter 13 plan negated by dismissal before plan completion); *In re Oparaji*, 698 F.3d 231, 238 (5th Cir. 2012) (same); *In re Bullock*, 986 F.3d 733, 739 (7th Cir. 2021) (quoting *Oparaji* with approval); *In re Mayo*, 2021 WL 4483419, at *3 (Bankr. M.D. Ala.) (following *Oparaji* and *Nash*).

There are two main policy reasons why chapter 11 plans survive dismissal or conversion but Disposable Income Plans do not. First, substituting the disposable income cramdown for the absolute priority rule and the other chapter 11 creditor safeguards is seen as a major benefit to debtors. It is perceived as unfair to give debtors the benefit of favorable plan terms if they do not make all the plan payments. As the Fifth Circuit stated in *Oparaji*:

> 'when a debtor fails to fulfill their [*sic*] end of the bargain because of the dismissal of their case, a resulting finding that their confirmed Chapter 13 plan is terminated serves to prevent a debtor from obtaining the benefit of those terms in a plan which are [*sic*] advantageous to the debtor.' *Id.* Debtor broke his agreement with Wells Fargo when his failure to make payments resulted in the bankruptcy's being dismissed without a discharge. He cannot now seek relief under that same agreement and cannot convincingly argue that equity is on his side.

698 F.3d at 238, quoting *In re Hufford*, 460 B.R. 172, 177 (Bankr. N.D. Ohio 2011). Courts do not have a similar problem enforcing chapter 11 plans; they are viewed as compromise arrangements that have creditor support.

Second, when a Disposable Income Plan case is dismissed or converted before the debtor completes the plan payments, there has been no discharge. Thus, unlike chapter 11 plans, nothing prevents creditors from enforcing their prepetition claims against debtors. If courts enforced

-11-
Case 20-12297-t11    Doc 74    Filed 04/21/22    Entered 04/21/22 16:01:54 Page 11 of 13

confirmed Disposable Income Plans after dismissal or conversion, creditors would have both their prepetition rights and their rights under the confirmed plans.

3. <u>Confirmed subchapter V "cramdown" plans</u>. There is no case law deciding whether subchapter V "cramdown" plans would survive dismissal or conversion. Nevertheless, because of the similarities to Disposable Income Plans (primarily the delayed discharge;[10] retention of the trustee;[11] inability to close the case until all plan payments have been made;[12] and the disposable income cramdown[13]), the Court suspects that dismissal or conversion would negate such plans. That would be consistent with the policy considerations discussed above.

4. <u>Debtor's confirmed plan</u>. Unlike subchapter V "cramdown" plans, there is no reason to think that "consensual" subchapter V plans would be treated differently than typical chapter 11 plans. The same Code provisions apply; discharge is effective on confirmation; the case can be closed after substantial consummation; the automatic stay has been terminated; and all creditor classes have approved the plan.

The problem in this case is that Debtor's plan varies in one important respect from a typical chapter 11 plan-- it defers the discharge until the plan payments are completed. This key provision is found in Disposable Income Plans and subchapter V "cramdown" plans. Thus, Debtor's plan has all of elements of a typical chapter 11 plan except for discharge on confirmation. If dismissal or conversion were ever required, the Court may have to determine whether Debtor's "hybrid" plan would survive or be negated.

---

[10] § 1192
[11] § 1183(c)
[12] § 350(a)
[13] § 1191(b) and (c).

-12-
Case 20-12297-t11    Doc 74    Filed 04/21/22    Entered 04/21/22 16:01:54 Page 12 of 13

Conclusion

The UST did not demonstrate that cause exists to dismiss or convert this case. The Motion to Dismiss shall be denied in a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 21, 2022
Copies to: Counsel of record